UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JOSHUA ZUCKERMAN,

                        Plaintiff,               Case No:

   - against -

ERIC GONZALEZ, MARITZA MEJIA-MING,
NICOLE CHAVIS, GREGORY THOMAS, and
JOHN DOES 1-3, each in their individual capacities,

                        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

      Plaintiff Joshua Zuckerman ("Zuckerman" or "plaintiff"), by his counsel, Law Office of Kevin Mintzer, P.C., complaining of defendants Eric Gonzalez ("Gonzalez"), Maritza Mejia-Ming ("Mejia-Ming"), Nicole Chavis ("Chavis"), Gregory Thomas ("Thomas"), and John Does 1-3, each in their individual capacities (collectively, "defendants"), alleges as follows:

## NATURE OF CLAIMS

      1.     The Kings County District Attorney's Office ("Brooklyn DA") purports to hold an "unwavering commitment to keeping Brooklyn safe and strengthening community trust by ensuring fairness and equal justice for all."[1] The Brooklyn DA failed to live up to that commitment, however, when on December 16, 2021, defendants unlawfully terminated plaintiff Joshua Zuckerman, an assistant district attorney ("ADA"), because he questioned the sufficiency of the Brooklyn DA's COVID-19 protocols and whether the Brooklyn DA was following the protocols it did have in place.

---

[1]    http://www.brooklynda.org/ (last accessed June 7, 2022).

1

2. In a meeting one day before defendants fired him, Zuckerman expressed questions and concerns to defendants Nicole Chavis and Gregory Thomas about the Brooklyn DA's failure to properly communicate with staff who worked on the 15th floor of its office about ten people who had called out sick or tested positive for COVID-19 in the week before. In response, Thomas insisted that no one had gotten COVID-19 in the office and that the cleaning staff thoroughly cleaned the offices using cleaning agents that killed COVID-19. These statements were unverifiable and belied plaintiff's own experiences and observations working at the Brooklyn DA.

3. Zuckerman was shocked at Thomas' reactions to his reasonable questions and concerns about workplace safety during the peak of the Omicron wave of the pandemic in New York City. After the meeting, plaintiff reached out to approximately 30 ADAs who worked at the Brooklyn DA. In a group text exchange, Zuckerman warned them to stay away from the 15th floor where he, and others, feared there was a COVID-19 outbreak.

4. The next day, without notice, warning, or explanation, human resources informed plaintiff that the Brooklyn DA was terminating his employment, effective immediately.

5. At the time of his termination, Zuckerman was a felony ADA in the domestic violence bureau ("DVB"). Plaintiff performed his job well and had recently received a promotion. Defendants fired plaintiff on December 16, 2021, because he had spoken out about the DA's inadequate COVID-19 protocols the day before in an effort to keep his coworkers, elderly domestic violence victims who visited the office, and the broader community safe during a pandemic that has taken the lives of millions of people worldwide.

6. By retaliating against plaintiff for his speech on a matter of public concern, defendants violated plaintiff's rights under the First Amendment, as enforced through 42 U.S.C § 1983 ("Section 1983"), as well as the New York State Constitution.

7. Plaintiff seeks injunctive and declaratory relief, compensatory and punitive damages, and other appropriate legal equitable relief.

## PARTIES, JURISDICTION, AND VENUE

8. Plaintiff Joshua Zuckerman is a 30-year-old man and a resident of the state of New York.

9. Defendant Eric Gonzalez is the Kings County District Attorney in Brooklyn, New York, having been elected to office in 2017 and 2021. At all relevant times, Gonzalez' actions described within were taken under color of state law.

10. Defendant Maritza Mejia-Ming is the Chief of Staff to Gonzalez. At all relevant times, Mejia-Ming's actions described within were taken under color of state law.

11. Defendant Nicole Chavis is the Deputy Chief of Staff to Gonzalez. At all relevant times, Chavis' actions described within were taken under color of state law.

12. Defendant Gregory A. Thomas is the Senior Executive for Law Enforcement Operations at Kings County District Attorney's Office and serves as a senior advisor to Gonzalez. At all relevant times, Thomas' actions described within were taken under color of state law.

13. Upon information and belief, Defendants John Does 1-3 are employees of the Kings County District Attorney's Office and participated in the decision to terminate plaintiff's employment with the Kings County District Attorney's Office. At all relevant times, the Doe Defendants' actions described within were taken under color of state law.

14. This Court has federal jurisdiction over plaintiff's Section 1983 claim pursuant to 28 U.S.C. §§ 1331 & 1343 and supplemental jurisdiction over plaintiff's state law claim pursuant to 28 U.S.C. § 1367.

15. This court is an appropriate venue for this action pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to plaintiff's claims occurred in the Eastern District of New York.

## FACTUAL ALLEGATIONS

**Plaintiff's Background and Employment with the Brooklyn DA**

16. Plaintiff Joshua Zuckerman earned his bachelor's degree in history and international relations from the University of Pennsylvania in 2014. In May of 2018, plaintiff received his law degree from Georgetown School of Law.

17. While in law school, Zuckerman held several internships and externships and served as a research assistant to multiple professors. In or around the summer of 2017, the Brooklyn DA hired Zuckerman as a summer intern in the conviction review unit.

18. While an intern at the Brooklyn DA, Zuckerman's supervising attorneys provided him positive feedback about his performance. As a result, in or around October or November of 2017, the Brooklyn DA offered Zuckerman a job as an ADA contingent upon his completion of law school and admission to the New York Bar.

19. On October 23, 2018, the New York Bar notified plaintiff that he had passed the Bar exam. This also happened to be plaintiff's first day of work as an ADA.

20. The Brooklyn DA initially assigned plaintiff to work in the early case assessment bureau. In June of 2019, it transferred plaintiff to the domestic violence bureau ("DVB").

**The COVID-19 Pandemic Begins**

21. In January 2020, the first known case of COVID-19 was reported in the United States. By March 2020, the World Health Organization declared COVID-19 a global pandemic and the president declared a national emergency.

22. The following month, the Governor of New York issued several executive orders in response to the pandemic, including that all non-essential businesses close, and that those businesses deemed essential limit the number of employees in the business at any given time.

23. Consistent with the Governor's directives, by April 2020, the Brooklyn DA's office instituted a policy requiring that staff members work from home if they could perform their duties remotely. Because Zuckerman's position at the time did not require him to be in the office, he began working from home.

24. Around the same time, the Brooklyn DA formed a COVID-19 committee comprised of Mejia-Ming, Chavis, and Thomas. When an employee of the Brooklyn DA contracted COVID-19, the employee was instructed to reach out to the committee so committee members could institute contract tracing procedures.

25. The policies of the Brooklyn DA's office only required the committee to notify people who had been in contact with someone with COVID-19 for more than 15 minutes and who had been within 6 feet of the person with COVID-19.

**Brooklyn DA Transfers Plaintiff to the Grand Jury Unit in the DVB**

26. In November 2020, the Brooklyn DA transferred Zuckerman to the grand jury unit in the DVB, where he sought indictments in domestic violence cases, including cases involving elder abuse. In that position, Zuckerman reported to ADA Sandra Roberts ("Roberts"), head of the

grand jury DVB. Due to the nature of his new position, the Brooklyn DA required plaintiff to be in the office more regularly.

27. On February 26, 2021, plaintiff tested positive for COVID-19. For over a week, plaintiff suffered from a high fever, chills, and cognitive impairment. For months thereafter plaintiff also intermittently experienced difficulty in concentrating, reading, and comprehending, a collection of symptoms sometimes referred to as "brain fog."

28. Pursuant to public health guidelines and Brooklyn DA policies, plaintiff quarantined at home for 10 days and informed the COVID-19 committee of his positive status.

29. In August 2021, the Brooklyn DA promoted plaintiff to felony assistant prosecutor in the DVB. The felony unit of the DVB was overseen by Michelle Kaminsky ("Kaminsky"). While working in the felony unit of the DVB, plaintiff reported to Mark Pagliuco ("Pagliuco") and Kori Meadow ("Meadow").

30. On information and belief, ADAs are typically not promoted to felony assistant prosecutors until they have at least one year of experience in the grand jury indictment unit.

**Multiple Brooklyn DA Staff Call out Sick**

31. Between December 10, 2021, and December 15, 2021, Evelina Rene ("Rene"), a supervisor in the misdemeanor unit of the DVB, informed all DVB staff via email that eight ADAs were out of the office. Since Zuckerman began working for the Brooklyn DA, it had been standard practice for supervisors in the DVB to inform all DVB staff daily via email who was out of the office that day.

32. In response to Rene's emails, colleagues of Zuckerman informed him that at least three of the eight individuals were out of the office because they tested positive for COVID-19. These colleagues also told Zuckerman that a felony ADA in the DVB was out sick with COVID-

6

19 and another felony ADA was in quarantine from exposure. At the time, approximately 55 people worked in person at the Brooklyn DA's office in the DVB.

33. Despite several staff members of the DVB testing positive for COVID-19, the Brooklyn DA did not communicate with DVB staff about whether they needed to quarantine or whether other steps needed to be taken to prevent an outbreak in the office. As a result, plaintiff and his colleagues feared that they would contract COVID-19 in the office and questioned whether it was safe for them to continue coming into the office. When plaintiff or his colleagues expressed these concerns to their supervisors, their supervisors told them they had no information to give them.

34. On information and belief, the Brooklyn DA also failed to inform approximately 20-30 other people who shared the floor with the DVB that several members of DVB staff had tested positive for COVID-19 or called out sick.

**Plaintiff Speaks Out About COVID-19 Safety and is Fired**

35. To address the concerns of the DVB staff, on or about December 15, 2021, Chavis and Thomas held an in-person meeting with approximately 25 staff in the DVB, including plaintiff, about COVID-19 protocols. In that meeting, Chavis and Thomas made several false statements about COVID-19 in the workplace, including:

   a. Falsely claiming no one had ever gotten COVID-19 from the office.

   b. Falsely claiming that the office was regularly cleaned and the offices of staff who had contracted COVID-19 were disinfected.

   c. Falsely claiming that the Brooklyn DA promptly contract traced and informed individuals when they had been exposed to COVID-19.

7

36. During the meeting, in response to Chavis' and Thomas' false statements, plaintiff stated that for the past week many people on the 15th floor were living in fear knowing that several people were out sick, without communication from the Brooklyn DA's office about whether they should quarantine or take other measures to protect their health. Plaintiff also requested that the Brooklyn DA send an alert to staff on the same floor (not just the same bureau) when someone on that floor called out sick or tested positive for COVID-19. Plaintiff reasoned that it was important to inform everyone on the floor because when he had COVID-19, he was unable to recall everyone with whom he had contact due to symptoms that affected his cognition. Plaintiff made these statements because he was concerned for himself, his coworkers, and victims who came to the Brooklyn DA's office seeking assistance, particularly elder abuse victims who were more vulnerable to contracting severe cases of COVID-19. After plaintiff spoke, Chavis and Thomas continued asserting that no one had contracted COVID-19 in the office and that the office was properly cleaned.

37. Later that day at approximately 4:30 pm, Mejia-Ming emailed a memo to all DVB staff. The memo stated that there were no "cluster of cases and no outbreaks" on the 15th floor, that "full contract tracing was completed" and that "COVID information received from anyone other than the COVID response team is not information – it's gossip."

38. Plaintiff did not see or read Mejia-Ming's memo until approximately 7:00 pm or 8:00 pm that evening.

39. Concerned about the Brooklyn DA's reaction to its staff's concerns regarding a deadly virus, and concerned for the safety of his fellow colleagues, victims who visited the DA's office, and the larger Brooklyn community, at approximately 6:30 pm, plaintiff sent the following text message in a group text that was comprised of approximately 30 Brooklyn ADAs who started

in the office during the same year as plaintiff: "Hey guys, try to aviod [sic] floor 15[.] 4 ppl have covid 10 in total called out sick[.] Not sure what is going on but we might dealing with a real outbreak and our meeting with Gregory Thomas today was less than reassuring."

40. The next day, plaintiff went to work as usual. At approximately 10:30 am, Kaminsky and Meadow separately reached out to plaintiff and informed him that he needed to go to human resources immediately.

41. Upon receiving the instruction from Kaminsky and Meadow, plaintiff went to HR and was met by Deputy Director of Employee Services, Jacqueline Duarte ("Duarte"). Duarte escorted plaintiff into a conference room where another person with whom plaintiff was unfamiliar was sitting. Thereafter, Duarte informed plaintiff that he was terminated effective immediately. When plaintiff asked why he was being terminated, Duarte responded that she was "not privy to that information." Duarte then gave plaintiff a letter that noted that his employment was terminated effective immediately but provided no reason for the termination.

42. After being notified that he was fired, plaintiff asked Kaminsky if she knew why he had been fired. Kaminsky told him she had no idea but that it was certainly not performance-related.

43. When plaintiff told Pagliuco that he had been terminated, Pagliuco thought plaintiff was kidding. When Pagliuco realized that plaintiff was serious, he expressed shock and said that plaintiff was a great ADA.

44. On or about December 17, 2021, in response to plaintiff's termination, Rob Walsh, a supervising ADA in the Trial Division of the Brooklyn DA, warned another ADA who had inquired about plaintiff's termination to be careful what she put in writing. Walsh suggested, in substance, that plaintiff had been terminated because of his text messages.

45. On December 18, 2021, plaintiff's former supervisor, Sandra Roberts, who was then the Deputy Bureau Chief in the Early Case Assessment Bureau, texted plaintiff and said that she was shocked and appalled that he had been terminated and said that she would gladly provide him a reference letter for jobs in the future.

46. Throughout his employment with the Brooklyn DA, plaintiff had never been written up for poor performance. Plaintiff had performed his job well.

47. On information and belief, Chavis, Mejia-Ming, Thomas, and one or more John Does recommended plaintiff's termination to the Kings County District Attorney Eric Gonzalez because of plaintiff's statements on December 15, 2021, concerning COVID-19 in the Brooklyn DA's office.

48. On information and belief, as the Kings County District Attorney, Gonzalez is responsible for the hiring and firing of all assistant district attorneys at the Brooklyn DA and he accepted the recommendation to terminate Zuckerman's employment.

## FIRST CAUSE OF ACTION
### First Amendment Retaliation Under Section 1983
**(All defendants)**

49. Plaintiff repeats and realleges paragraphs 1-48 as if fully set forth herein.

50. Plaintiff's statements about COVID-19 and the Brooklyn DA's office were matters of public concern.

51. In speaking about the COVID-19 pandemic and the Brooklyn DA's office, Zuckerman spoke as a citizen, not an employee. Zuckerman did not have any job duties related to COVID-19 policies or protocols in the Brooklyn DA's office.

52. Plaintiff's statements on December 15, 2021, concerning COVID-19 and the Brooklyn DA's office were protected speech under the First Amendment to the Constitution of the United States.

53. By the acts and practices described above, including terminating plaintiff's employment because of plaintiff's protected First Amendment speech, defendants have violated plaintiff's rights under the First Amendment to the United States Constitution and 42 U.S.C. § 1983.

54. Defendants engaged in these practices with malice and reckless indifference to plaintiff's federally protected rights.

55. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages for mental anguish and humiliation as a result of defendants' unlawful acts.

**SECOND CAUSE OF ACTION**
**New York State Constitution**
**(All defendants)**

56. Plaintiff repeats and realleges paragraphs 1-55 as if fully set forth herein.

57. Plaintiff's statements about COVID-19 and the Brooklyn DA's office were matters of public concern.

58. In speaking about the COVID-19 pandemic and the Brooklyn DA's office, Zuckerman spoke as a citizen, not an employee. Zuckerman did not have any job duties related to COVID-19 policies or protocols in the Brooklyn DA's office.

59. Plaintiff's statements on December 15, 2021, concerning COVID-19 and the Brooklyn DA's office were protected speech under Article I, Section 8 of the New York State Constitution.

60. By the acts and practices described above, including terminating plaintiff's employment because of plaintiff's protected speech and expression regarding matters of public health, defendants have violated plaintiff's rights under Article I, Section 8 of the New York State Constitution.

61. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages for mental anguish and humiliation as a result of defendants' unlawful acts.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff respectfully requests that this Court enter an award:

(a) declaring the acts and practices complained of herein a violation of Section 1983, the First Amendment, and the New York State Constitution;

(b) directing defendants to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect plaintiff's employment opportunities;

(c) directing defendants to place plaintiff in the position he would be in but for defendants' retaliatory treatment of him, and to make him whole for all earnings he would have received but for defendants' unlawful actions;

(d) awarding plaintiff compensatory damages for his mental anguish, emotional distress, and humiliation;

(e) directing defendants to pay plaintiff punitive damages;

(f) awarding plaintiff pre-judgment and post-judgment interest, as well as reasonable attorneys' fees and the cost of this action; and

(g) awarding such other and further relief as the Court deems necessary and proper.

**DEMAND FOR JURY TRIAL**

  Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff demands a jury trial.

Dated: New York, New York
   June 8, 2022

                LAW OFFICE OF
                KEVIN MINTZER, P.C.

              By: _/s/ Kevin Mintzer_____
                Kevin Mintzer
                Laura L. Koistinen (not yet admitted
                to EDNY)
                1350 Broadway, Suite 2220
                New York, New York 10018
                T: 646-843-8180
                F: 646-478-9768
                km@mintzerfirm.com
                Attorneys for
                Plaintiff Joshua Zuckerman