No. 22 CV 3384 (CBA)(RER)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JOSHUA ZUCKERMAN,

Plaintiff,

-against-

ERIC GONZALEZ, MARITZA MEJIA-MING,
NICOLE CHAVIS, GREGORY THOMAS, JOHN
DOES 1-3, each in their individual capacities,

Defendants.

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT

*HON. SYLVIA O. HINDS-RADIX*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Dominique F. Saint-Fort*
*Tel:  (212) 356-2444*
*Matter No. 2022-035835*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF FACTS ..................................................................................................... 2

ARGUMENT ......................................................................................................................... 5

          A.  Standard on a Motion to Dismiss ........................................................ 5

     POINT I ................................................................................................................... 6

         PLAINTIFF'S SECTION 1983 CLAIMS SHOULD
         BE DISMISSED AGAINST DEFENDANTS
         GONZALEZ, MEJIA-MING, THOMAS AND
         CHAVIS FOR LACK OF PERSONAL
         INVOLVEMENT ..................................................................................... 6

     POINT II .................................................................................................................. 8

         PLAINTIFF'S FIRST AMENDMENT
         RETALIATION CLAIMS FAILS ........................................................... 8

         A.  Plaintiff Fails to State a Claim of First
           Amendment Retaliation ................................................................... 9

     POINT III ................................................................................................................ 13

         THE INDIVIDUAL DEFENDANTS ARE
         QUALIFIEDLY IMMUNE FROM SUIT ............................................... 13

     POINT IV ................................................................................................................ 14

         PLAINTIFF'S CLAIM UNDER THE NEW YORK
         STATE CONSTITUTION MUST BE DISMISSED .............................. 14

CONCLUSION ...................................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Adams v. Ellis,*
  2012 U.S. Dist. LEXIS 29621 (S.D.N.Y. Mar. 1, 2012) ...................................................11, 12

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)...........................................................................................................5

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007)...........................................................................................................5

*Black v. Coughlin,*
  76 F.3d 72 (2d Cir. 1996)...................................................................................................6

*Boykin v. KeyCorp,*
  521 F.3d 202 (2d Cir. 2008)...............................................................................................8

*Colon v. City of N.Y.,*
  2021 U.S. Dist. LEXIS 8931 (S.D.N.Y. Jan. 15, 2021).....................................................8

*Connick v. Myers,*
  461 U.S. 138 (1983)...........................................................................................................9

*Constant v. Annucci,*
  2018 U.S. Dist. LEXIS 58318 (S.D.N.Y. Apr. 5, 2018)..................................................6, 7

*Corbett v. Annucci,*
  2018 U.S. Dist. LEXIS 24291 (S.D.N.Y. Feb. 13, 2018).................................................6

*Ezekwo v. New York City Health & Hosp. Corp.,*
  940 F.2d 775 (2d. Cir. 1991).............................................................................................10

*Felmine v. City of New York,*
  2012 U.S. Dist. LEXIS 77299 (E.D.N.Y. June 4, 2012) ..................................................14

*Fierro v. City of New York,*
  2022 U.S. Dist. LEXIS 24549 (S.D.N.Y. Feb. 10, 2022).................................................8, 9

*Flores v. City of Mount Vernon,*
  41 F. Supp. 2d 439 (S.D.N.Y. 1999)..................................................................................14

*Gangadeen v. City Of New York,*
  654 F. Supp. 2d 169 (S.D.N.Y. 2009)................................................................................11

*Garcetti v. Ceballos*,
    547 U.S. 410 (2006)..............................................................................................9

*Harlow v. Fitzgerald*,
    457 U.S. 800 (1982)............................................................................................13

*Kuczinski v. City of New York*,
    2020 U.S. Dist. LEXIS 125958 (S.D.N.Y. July 16, 2020) ...............................12

*Montero v. City of Yonkers, N.Y.*,
    890 F.3d 386 (2d Cir. 2018)...............................................................................11

*Munafo v. Metropolitan Trans. Auth.*,
    285 F.3d 201 (2d Cir. 2002)...............................................................................11

*Pearson v. Callahan*,
    555 U.S. 223 (2009).......................................................................................5, 13

*Raymond v. City of New York*,
    2017 U.S. Dist. LEXIS 31742 (S.D.N.Y. Mar. 6, 2017) ..................................14

*Ross v. Breslin*,
    693 F.3d 300 (2d Cir. 2012)................................................................................9

*Ruotolo v. City of New York*,
    514 F.3d 184 (2d Cir. 2008)...............................................................................10

*Saucier v. Katz*,
    533 U.S. 194 (2001)............................................................................................13

*Wrobel v. County of Erie*,
    692 F.3d 22 (2012).............................................................................................12

*Walker v. New York City Transit Auth.*,
    2001 U.S. Dist. LEXIS 14569 (S.D.N.Y. Sept. 19, 2001)..................................9

*Wu v. Metro-North Commuter R.R.*,
    2015 U.S. Dist. LEXIS 126882 (S.D.N.Y. Sept. 22, 2015)...............................12

## State Cases

*Liu v. New York City Police Dep't*,
    216 A.D.2d 67 (1st Dep't 1995) ........................................................................13

## Federal Statutes

42 U.S.C. § 1983......................................................................................*passim*

**Rules**

Federal Rules of Civil Procedure Rule 12(b)(6) ..............................................................1, 5

**Constitutional Provisions**

New York State Constitution.................................................................................1, 14

United States Constitution First Amendment ......................................................*passim*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------- x

JOSHUA ZUCKERMAN,

                              Plaintiff,

           -against-

                                       22 CV 3384 (CBA)(RER)

ERIC GONZALEZ, MARITZA MEJIA-MING,
NICOLE CHAVIS, GREGORY THOMAS, JOHN
DOES 1-3, each in their individual capacities,

                             Defendants.

------------------------------------------------------------------------- X

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

### PRELIMINARY STATEMENT

Plaintiff, Joshua Zukerman, a former Assistant District Attorney ("ADA") in the Kings County District Attorney's Office ("KCDAO"), brings the instant action pursuant to the First Amendment of the United States Constitution via 42 U.S.C. § 1983 and the New York State Constitution, asserting claims of retaliation. *See* ECF Dkt. No. 1 ¶¶ 2, 19, 41, 49-55. Specifically, Plaintiff alleges that he was terminated following comments he made to colleagues regarding KCDAO's COVID-19 policies, including contact tracing and transparency about positive COVID-19 cases. *See id.* ¶¶ 3, 35-39, 41.

As set forth more fully below, Plaintiff's claims should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. Plaintiff's First Amendment retaliation claim fails as his "speech" is not related to a matter of public concern and thus is not speech protected by the First Amendment. As such, the Complaint should be dismissed.

## STATEMENT OF FACTS[1]

Plaintiff, Joshua Zukerman, is a former Assistant District Attorney ("ADA") in the Kings County District Attorney's Office ("KCDAO").  *See* ECF Dkt. No. 1 ¶¶ 1 and 19. During the summer of 2017, Plaintiff interned with KCDAO, and thereafter was offered a position as an ADA upon graduation, which Plaintiff accepted.  *See id.* ¶¶ 17-19.  Plaintiff commenced his employment with KCDAO on October 23, 2018.  *See id.* ¶ 19.  Plaintiff was initially assigned to the Early Case Assessment Bureau and, in June 2019, was transferred to the Domestic Violence Bureau ("DVB").  *See id.* ¶ 20.  In November 2020, Plaintiff was transferred to the Grand Jury Unit within the DVB.  *See id.* ¶ 26.  He contends that in August 2021, he was promoted to Felony Assistant Prosecutor in the DVB.  *See id.* ¶ 29.

In December 2021, Plaintiff asserts he was informed that multiple people assigned to DVB had called out sick due to positive COVID-19 test results.  *See id.* ¶¶ 31-34.  In particular, Plaintiff alleges to have received an email between December 10, 2021 and December 15, 2021 from Evelina Rene, a supervisor in DVB, stating that eight ADA's were out of the office.  *See id.* ¶ 31.  Plaintiff does not allege, however, that the email stated the eight ADA's were absent due to a COVID-19 infection or close contact with a person who tested positive for COVID-19.  Plaintiff alleges that in response to the email, certain unidentified "colleagues" – not including Rene – informed him that three of the eight individuals were absent due to positive COVID-19 test results, and two other individuals, only one of whom was assigned to DVB, were also absent due to COVID-19.  *See id.* ¶ 32.  He alleges that the KCDAO did not communicate with DVB about the need to quarantine or steps necessary to prevent an office outbreak.  *See id.*

[1] For the purposes of this motion only, the well-pleaded allegations of fact in the Complaint are deemed to be true.

¶ 33.  Plaintiff alleges that these presumptions caused concern amongst him and his colleagues, and his supervisors had no information to provide in response to these concerns.  *See id.*  "Upon information and belief," Plaintiff contends that, during some undisclosed time frame, approximately 20-30 other people who shared the floor with DVB were absent due to positive COVID-19 tests or otherwise "called out sick."  *Id. ¶ 34.*

In response to the COVID-19 pandemic, KCDAO formed a COVID-19 Committee, consisting of Defendants Maritza Mejia-Ming, Chief of Staff to Kings County District Attorney Eric Gonzalez ("DA Gonzalez "), Nicole Chavis, Deputy Chief of Staff to DA Gonzalez, and Gregory Thomas, KCDAO Senior Executive for Law Enforcement Operations. *See id. ¶¶* 10-12, 24.  When a KCDAO employee contracted COVID-19, employees were to contact the committee to institute contact tracing procedures.  *See id. ¶* 24.  Plaintiff contends that the KCDAO policy requires such notification only when an employee had been in contact with someone with COVID-19 for more than 15 minutes and had been within 6 feet of that person. *See id. ¶* 25.

To address to the specific concerns by DVB staff, Defendants Chavis and Thomas held a meeting on December 15, 2021 with 25 staff members in DVB about COVID protocols. *See id. ¶¶* 10-12, 24, 35.  Plaintiff alleges that during this meeting several false statements were made, including that: (1) "no one had ever gotten COVID-19 from the office"; (2) "the office was regularly cleaned and the offices of staff who had contracted COVID-19 were disinfected"; and (3) the office "promptly contract [sic.] traced and informed individuals when they had been exposed to COVID-19."  *Id. ¶* 35.  During the meeting Plaintiff alleges he stated that many people in DVB were out sick, but DVB staff were not informed by KCDAO if they should quarantine, and requested that KCDAO send an alert to staff on the same floor when someone calls out sick or tested positive for COVID-19, rather than just those assigned to same bureau.

*See id.* ¶ 36.   Plaintiff alleges that he made these statements due to concern for himself, his coworkers, and victims who visit KCDAO seeking assistance.  *See id.*  In response, Plaintiff alleges that "Chavis and Thomas continued asserting that no one contracted COVID-19 in the office and that the office was properly cleaned." *Id.*

Later that day, Plaintiff alleges that Mejia-Ming emailed a memo to DVB staff stating that there were no cluster of cases and no outbreaks on the 15th Floor, that full contact tracing had been completed, and that COVID-19 information received from anyone other than the COVID-19 committee is gossip, rather than information.  *See id.* ¶ 37.   Plaintiff claims to have not seen this email until approximately 7 or 8 p.m. that evening.  *See id.* ¶ 38.   Prior to seeing Mejia-Ming's email, Plaintiff alleges that he sent the following text message to 30 ADAs in his class year: "Hey guys, try to aviod [sic] floor 15[.] 4 ppl have covid 10 in total called out sick[.] Not sure what is going on but we might dealing [sic.] with a real outbreak and our meeting with Gregory Thomas today was less than reassuring." *Id.* ¶ 39.

Plaintiff claims that the following day at 10:30 a.m., his two supervisors separately reached out to him and told him to report to Human Resources, and when he arrived to Human Resources he met with Deputy Director of Employee Services, Jacqueline Duarte, and was informed he was terminated effective immediately.  *See id.* ¶ 40-41.  Upon asking why he was being terminated, Duarte allegedly told Plaintiff that she "was not privy to that information." *Id.* ¶ 41.  Plaintiff alleges that his supervisors informed him that his termination was not performance related and claims that he was never written up for poor performance. *See id.* 42-43, 45-46.  Plaintiff contends that on December 17, 2021, Rob Walsh, a supervising ADA in the Trial Division, "warned another ADA who had inquired about plaintiff's termination to be careful what she put in writing." *Id.* ¶ 44.

## ARGUMENT

**A.      Standard on a Motion to Dismiss**

To survive a Rule 12(b)(6) motion to dismiss, plaintiff must plead facts adequate "to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Iqbal*, the Supreme Court explained the plausibility standard by stating that, where a complaint pleads facts that are merely consistent with a defendant's liability "without some further factual enhancement[,] it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 697, *quoting Twombly*, 550 U.S. at 557). That is, the facts set forth in the complaint "must be enough to raise a right to relief above the speculative level," and a party's "obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions." *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted). A complaint fails to state a claim "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 555 U.S. at 679. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id., quoting Twombly*, 550 U.S. at 557. Determining plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "Unless a plaintiff's well-pleaded allegations of fact have 'nudged [his] claims across the line from conceivable to plausible, [the plaintiff's] complaint must be dismissed.'" In applying this standard, the Court accepts as true all well-pleaded factual allegations, but does not credit "mere conclusory statements" or "threadbare recitals of the elements for a cause of action." *Iqbal*, 556 U.S. at 662, *citing Twombly*, 550 U.S. at 555). Although the Court must accept the factual allegations of a complaint as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.*

**POINT I**

**PLAINTIFF'S SECTION 1983 CLAIMS SHOULD BE DISMISSED AGAINST DEFENDANTS GONZALEZ, MEJIA-MING, THOMAS AND CHAVIS FOR LACK OF PERSONAL INVOLVEMENT**

Plaintiff's complaint fails to plausibly plead personal involvement of any of the individually-named defendants sufficient to support a claim under § 1983. Rather, Plaintiff's complaint contends that he made a statement at the December 15, 2021 COVID meeting – notably outside of the presence of two individually-named defendants – and less than 24-hours later, wholly upon information and belief, high-level executives in KCDAO made a recommendation for his termination. These wholly conclusory allegations are clearly insufficient to establish personal involvement.

"A central component of a § 1983 claim is Defendant's personal involvement in the alleged constitutional violation." *Constant v. Annucci*, No. 16 CV 3985 (NSR), 2018 U.S. Dist. LEXIS 58318, *8-10 (S.D.N.Y. Apr. 5, 2018), citing *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) ("It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation"). Where a plaintiff "seek[s] to impose individual liability upon a government officer for actions taken under color of state law," such an individual may not be held liable for damages for constitutional violations simply because he or she held a high position of authority. *Corbett v. Annucci*, No. 16 CV 4492 (NSR), 2018 U.S. Dist. LEXIS 24291, at *13 (S.D.N.Y. Feb. 13, 2018), citing *Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991); *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). Rather, "a plaintiff must establish a given defendant's personal involvement in the claimed violation in

order to hold that defendant liable in his individual capacity." *Constant*, 2018 U.S. Dist. LEXIS 58318, *9.   The personal involvement of a supervisory defendant, as relevant here, may be shown by evidence that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, [or] (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts . . .

*Id.*, citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

Plaintiff makes no such showing with respect to any of the individually-named Defendants.   Specifically, Plaintiff's allegations regarding DA Gonzalez and Mejia-Ming essentially assert liability against them because of their positions of seniority.   The only allegation Plaintiff asserts regarding DA Gonzalez, made without support and "upon information and belief," is that DA Gonzalez "is responsible for the hiring and firing of all [ADAs] at [KCDAO] and he accepted the recommendation to terminate [Plaintiff's] employment." ECF Dkt. No. 1, ¶ 48.   Such allegations made upon information and belief, must be supported by a statement of fact.   See Perez v. Westchester Foreign Autos, Inc., No. 11 CV 6091 (ER), 2013 U.S. Dist. LEXIS 35808, *13 (S.D.N.Y. Feb. 28, 2013) (allegations pleaded upon information and belief "must be accompanied by a statement of the facts upon which the belief is founded").   Plaintiff fails to support this allegation with any statement of fact.   Similarly, with respect to Mejia-Ming, Plaintiff states only that following the December 15, 2021 meeting on KCDAO COVID-19 protocols, where approximately 25 DVB staff were present, she sent an email to all DVB staff stating that there was no COVID-19 cluster or outbreak on the 15th Floor.   *See id.* ¶ 37.   Neither DA Gonzalez nor Mejia-Ming were present for Plaintiff's alleged speech during the December 15, 2021 meeting.   Further, Plaintiff makes no allegation that Mejia-Ming was even

informed of his alleged statements during the meeting. These bare and conclusory allegations hardly support personal involvement for §1983 purposes.

Moreover, Plaintiff's only allegations related to Thomas and Chavis are that they conducted the meeting to address KCDAO COVID-19 protocols and that, after Plaintiff voiced his concerns about perceived insufficiencies in the protocols, they stated that no one had contracted COVID-19 in the office and the office was properly cleaned. *See id.* ¶ 37. Plaintiff then alleges without any support and again, wholly upon information and belief, that Chavis, Mejia-Ming, and Thomas immediately went to DA Gonzalez to request Plaintiff's termination. This incredible unsupported conclusion is hardly sufficient to support personal involvement for purposes of §1983 liability. Further, Plaintiff makes no allegation that any of the individually-named Defendants – all high level executives within KCDAO – were made aware of the text message Plaintiff sent to his KCDAO classmates only hours before his termination. Plaintiff's failure to allege that the individually-named Defendants were even made aware of this alleged "speech" clearly demonstrates a lack of personal involvement.

These slim unsupported allegations against the individual defendants "fail to state a claim [because] plaintiff does not support them with a statement of facts that create a plausible inference of their truth." *Boykin v. KeyCorp*, 521 F.3d 202, 215 (2d Cir. 2008); *accord Colon v. City of N.Y.*, No. 19 CV 10435 (PGG) (SLC), 2021 U.S. Dist. LEXIS 8931, at *60-61 (S.D.N.Y. Jan. 15, 2021) (citing cases). For the foregoing reasons, all claims against defendants Gonzalez, Chavis, Thomas and Mejia-Ming, must be dismissed, as Plaintiff has failed to plausibly plead that they participated in any alleged constitutional deprivations.

## POINT II

### PLAINTIFF'S FIRST AMENDMENT RETALIATION CLAIMS FAILS

**A.      Plaintiff Fails to State a Claim of First Amendment Retaliation**

Plaintiff's First Amendment retaliation claim hinges on his allegations that he was terminated for: (1) raising concerns about KCDAO's COVID-19 protocols at the December 15, 2021 meeting and (2) a text message Plaintiff sent to his KCDAO classmates.  Plaintiff's claim fails because he does not adequately plead a cause of action for First Amendment retaliation that he spoke on a matter of public concern.

A plaintiff asserting a First Amendment retaliation claim must plausibly allege that: "(1) [the] speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him; and (3) there was a causal connection between this adverse action and the protected speech." *Fierro v. City of New York*, No. 20 CV 9966 (GHW), 2022 U.S. Dist. LEXIS 24549, *13 (S.D.N.Y. Feb. 10, 2022), citing *Matthews v. City of New York*, 779 F.3d 167, 172 (2d Cir. 2015).  A public employee's speech is only protected to the extent that the employee is speaking as citizen on matters of public concern.  *See Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006).  Thus, "public employees cannot state a claim for First Amendment retaliation unless (among other requirements) they speak as citizens on matters of public importance." *Fierro*, 2022 U.S. Dist. LEXIS 24549, at *13, quoting *Castine v. Zurlo*, 756 F.3d 171, 177 n.5 (2d Cir. 2014).  In other words, unless the employee speaks as a citizen, the speech at issue is unprotected "even when the subject of an employee's speech is a matter of public concern." *Ross v. Breslin*, 693 F.3d 300, 305 (2d Cir. 2012).

To determine whether speech addresses a matter of public concern, courts examine the "content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 147-48 (1983).  When that examination reveals speech that can be "fairly considered as relating to [a] matter of political, social, or other concern to the community," it is speech on a matter of public concern. *See id.* at 146.  However, where an

employee's speech is specific to his or her personal work experience, it is not considered a matter of public concern even if the topic relates to an  issue the public, generally, may be concerned about.  *See Walker v. New York City Transit Auth.*, No. 99 CV 2227 (DC), 2001 U.S. Dist. LEXIS 14569, at *33 (S.D.N.Y. Sept. 19, 2001) (rejecting the argument that all complaints relating to race or gender discrimination implicate matters of public concern).

Here, Plaintiff allegedly raising concerns regarding KCDAO's COVID-19 policies and procedures to (1) the COVID Committee during the December 15, 2021 meeting and (2) a group of his co-workers via text message, is not speech on a matter of public concern, but is rather specific to Plaintiff's own personal experience.  Where the speech or conduct at issue is intended to redress personal grievances, such as an employee's dissatisfaction with working conditions or salary, such speech or conduct does not address matters of public concern and is, therefore, not protected.  *See Connick*, 461 U.S. 138, 148 (1983) (employee's questionnaire distributed to her co-workers and addressing her transfer not a matter of public concern).  While the fact that COVID-19 impacted the entire world and thus is generally a concern for the public, Plaintiff's dissatisfaction with KCDAO's contact tracing policies and practices within its office, and more specifically on Plaintiff's floor within the office, is not a matter of public concern.  *See e.g. Ruotolo v. City of New York*, 514 F.3d 184, 189-90 (2d Cir. 2008) (police officer's lawsuit alleging that he had been retaliated against for a report alerting superiors to environmental hazard at his precinct was not speech on matter of public concern).

Plaintiff's attempt to couch his specific concerns about KCDAO's COVID-19 policies as affecting the larger public by noting that elderly domestic violence victims visit the office (*see* ECF Dkt. No. 1, ¶¶ 5, 36), is similarly insufficient to establish a First Amendment retaliation claim.  "The mere fact that . . . [a public employee's] comments could be construed broadly to implicate matters of public concern," does not itself create speech on matters of public

concern. *Ezekwo v. New York City Health & Hosp. Corp.*, 940 F.2d 775, 781 (2d. Cir. 1991). Moreover, the "speech" at issue – Plaintiff's specific comments allegedly made at the December 15, 2021 meeting and his text message to his colleagues – make no mention of non-employees of KDCAO or the general public being affected by KCDAO's COVID-19 policies. *See* ECF Dkt. No. 1, ¶¶ 35-36 39.   While Plaintiff states that his motivation for making such statements was due, in part, to concern for elderly domestic violence victims visiting the office, Plaintiff's actual statements did not raise any such concerns and thus cannot be considered part of the speech for which Plaintiff contends he was retaliated against for making.

Most significantly, Plaintiff's alleged speech sought to change internal policies of KCDAO regarding its response to COVID-19, which has been held by this Court to not be a matter of a public concern.   Specifically, during the December 15, 2021 meeting, Plaintiff contends that he challenged Chavis and Thomas on the KCDAO's COVID-19 policies, and suggested certain changes to the policy, including alerting everyone on the floor when a person tested positive for COVID-19, rather than only alerting those the individual reported to have come in contact with or those in their bureau.   This is a specific internal policy change that Plaintiff requested which is not a matter of public concern.   This case is similar to the circumstance faced by this Court in *Adams v. Ellis*, No. 09 CV 1329 (PKC), 2012 U.S. Dist. LEXIS 29621, *30 (S.D.N.Y. Mar. 1, 2012).   There, the plaintiff alleged First Amendment retaliation for speaking out about her dissatisfaction with the New York State Division of Parole's policies requiring parole officers to collect supervision fees and certain paperwork demands.   This Court held that Plaintiff "complained about the policies and practices that affected her as a DOP employee." *Id.* at *32.   Thus, this Court determined that the plaintiff's speech was not on a matter of public concern.   Similarly, here, Plaintiff's concerns were not about the COVID-19 pandemic generally, but the internal policies that KCDAO had in place

about contact tracing. *See Montero v. City of Yonkers, N.Y.*, 890 F.3d 386, 399 (2d Cir. 2018) ("[S]peech that principally focuses on an issue that is personal in nature and generally related to the speaker's own situation, or that is calculated to redress personal grievances — even if touching on a matter of general purpose — does not qualify for First Amendment protection.") (quoting *Jackler v. Byrne*, 658 F.3d 225, 235 (2d Cir. 2011)).

As such, Plaintiff's claims are distinguishable from those cases where the Court held that a workplace health and safety issue rose to a matter of public concern. *Cf. Munafo v. Metropolitan Trans. Auth.*, 285 F.3d 201, 211-12 (2d Cir. 2002) (plaintiff's speech found to be on a matter of public concern where he lodged a series of complaints about what he perceived to be safety problems in Track Department operations); *Gangadeen v. City Of New York*, 654 F. Supp. 2d 169, 187 (S.D.N.Y. 2009) (plaintiffs' speech found to be on a matter of public concern where they complained about hazardous fumes in the workplace."). Central to the evaluation of the legal issue of whether Plaintiff's speech is afforded First Amendment protection is obviously the speech itself. Plaintiff's specific speech at the December 15, 2021 meeting was a change to KCDAO's COIVID-19 policy on contact tracing. That the speech relates to COVID-19, a virus the general public is concerned about, does not alter the true nature of Plaintiff's speech – a complaint about an internal policy. Thus, as in *Adams*, Plaintiff's complaint about an internal KCDAO policies is not speech on a matter of public concern as it impacted his own personal circumstance. Such speech is not afforded First Amendment protection. Thus, because Plaintiff's speech does not relate to a matter of public concern, his First Amendment retaliation claim fails.

Finally, Plaintiff fails to plausibly plead that his termination was causally connected to his speech in the text message, as any allegation of knowledge of this message by decisionmakers is wholly lacking in the Complaint. "[I]t is only intuitive that for protected

conduct to be a substantial or motivating factor in a decision, the decisionmakers must be aware of the protected conduct." *See Wrobel v. County of Erie*, 692 F.3d 22, 32 (2012). Plaintiff makes no allegation that any of the individually-named Defendants were sent, informed of, or otherwise aware of the alleged text message. Plaintiff states only that he sent the message to 30 ADAs who started in the office the same year as him. These individuals are not his supervisors, nor were they decisionmakers in his termination. *See Kuczinski v. City of New York*, No. 17 CV 7741 (JGK), 2020 U.S. Dist. LEXIS 125958 *15 (S.D.N.Y. July 16, 2020) (dismissing Plaintiff's First Amendment retaliation claim where "[t]here [was] no evidence, either direct or circumstantial, that the individual defendants in this case were aware of the plaintiff's alleged protected speech."); *Wu v. Metro-North Commuter R.R.*, No. 14 CV 7015, 2015 U.S. Dist. LEXIS 126882, at *17 (S.D.N.Y. Sept. 22, 2015) ("[The] [p]laintiff has not pleaded any facts that would suggest that [the] [d]efendant [ ] even had any knowledge of these complaints, rendering baseless any inference that he might have been motivated to retaliate for them.").

In fact, the evidence offered by the defendants demonstrates that the defendants had no knowledge that the plaintiff had spoken with the Bronx PIU when the plaintiff was removed from his post and then terminated in May 2017.

## POINT III

## THE INDIVIDUAL DEFENDANTS ARE QUALIFIEDLY IMMUNE FROM SUIT

Under qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A violated right is "clearly established" if "it would be clear to a reasonable officer [in the position of the defendant] that his

conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). "This inquiry turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Pearson v. Callahan*, 555 U.S. 223, 244 (2009) (internal quotation marks omitted).

In the instant case, all of the individual defendants are entitled to qualified immunity under Section 1983. As shown above, the actions of Defendants did not violate any constitutional right and cannot give rise to any liability. *See Liu v. New York City Police Dep't*, 216 A.D.2d 67, 68 (1st Dep't 1995)("A government official performing a discretionary function is entitled to qualified immunity providing his or her conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."). Thus, qualified immunity shields the individual defendants and all constitutional claims must be dismissed as against them.

## POINT IV

### PLAINTIFF'S CLAIM UNDER THE NEW YORK STATE CONSTITUTION MUST BE DISMISSED

Plaintiff's claim under the New York State Constitution must also be dismissed. "New York courts will only imply a private right of action under the state constitution where no alternative remedy is available to the plaintiff." *Felmine v. City of New York*, No. 9 CV 3768 (CBA) (JO), 2012 U.S. Dist. LEXIS 77299 (E.D.N.Y. June 4, 2012) (emphasis added); *Flores v. City of Mount Vernon*, 41 F. Supp. 2d 439, 446-47 (S.D.N.Y. 1999). "[I]it is a common view among District Courts in this Circuit that there is no right of action under the New York State Constitution for claims that can be brought under § 1983." *Raymond v. City of New York*, No. 15 CV 6885 (LTS), 2017 U.S. Dist. LEXIS 31742, at *25 (S.D.N.Y. Mar. 6, 2017), quoting *Dava v. City of New York*, 2016 U.S. Dist. LEXIS 115639, at *30-31 (S.D.N.Y. Aug. 29, 2016). As

Plaintiff has advanced a claim in this action under § 1983, he clearly has no right of action under the New York State Constitution.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the complaint in its entirety and grant

such other and further relief as the Court deems just and proper.

Dated:        New York, New York
              October 14, 2022

                          **HON. SYLVIA O. HINDS-RADIX**
                          Corporation Counsel of the
                          City of New York
                          Attorney for Defendants
                          100 Church Street, Room 2-186
                          New York, New York 10007
                          (212) 356-2444
                          dosaint@law.nyc.gov


              By:         */s Dominique F. Saint-Fort*
                          Dominique F. Saint-Fort
                          Assistant Corporation Counsel